Joseph N. RIGGS, III, Alice Hector, Peter Cubra, James R. Toulouse, Tova Indritz, Randi McGinn, Nancy Hollander, Sigmund Bloom, Hank Farrah, Joe Fine, Dorie Bunting, Allen Cooper, Richard Moore, The American Civil Liberties Union of New Mexico, a New Mexico non-profit corporation, The New Mexico Chapter of the National Lawyers Guild, and all others Similarly Situated who are Represented by the Above Named Persons, Plaintiffs/Appellants,

v.

CITY OF ALBUQUERQUE, a Municipal Corporation; Ken Schultz, Mayor of the City of Albuquerque, Sam Baca, Police Chief of the City of Albuquerque, and Their Agents and Employees and all Others Acting in Active Concert or Cooperation with Them, Defendants/Appellees.

No. 89–2006.

United States Court of Appeals, Tenth Circuit.

Oct. 12, 1990.

Philip B. Davis, American Civil Liberties Union of New Mexico, Albuquerque, N.M. (Ray Twohig, Albuquerque, N.M., on the brief), for plaintiffs/appellants.

Bruce Thompson, Civerolo, Hansen & Wolf, Albuquerque, N.M. (Paula Forney, Asst. City Atty., Richard C. Civerolo, Ellen M. Kelly, Civerolo, Hansen & Wolf, Albuquerque, N.M., on the brief), for defendants/appellees.

Before HOLLOWAY, Chief Judge, and ANDERSON and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Plaintiffs appeal from the district court's January 4, 1989 order dismissing this civil rights class action. Plaintiffs allege that the Albuquerque Police Department conducted certain investigations of their activities in violation of their constitutional rights, and they seek declaratory and injunctive relief. Relying on *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), the district court dismissed the suit on the pleadings for lack of standing. Because we conclude that plaintiffs have made sufficient allegations in their complaint to survive defendants' motion to dismiss, we reverse.

## FACTS

During a mayoral campaign, allegations that the Intelligence Unit of the Albuquerque Police Department kept investigative files on controversial figures were made public. An audit of the Intelligence Unit's files by independent counsel, William Riordan, was ordered. After completing the audit, Riordan found that some files did not appear to have a proper police purpose. Plaintiffs allege that Riordan also found that information in the files had at times been released to the news media and that the police had not cooperated during the audit.

A task force was formed to recommend to the Albuquerque City Council how to resolve the problems surrounding the existence of the files. After an expert reviewed the files for the task force, the task force recommended that the files be purged and that new guidelines be placed on the Intelligence Unit. The task force issued a final report on March 17, 1988, ordering that all improper files be destroyed not more than six months from the date of the report. A team was formed to review the records and to determine what should be purged. The Administrative Officer of the City of Albuquerque ordered the purged documents be destroyed on September 21, 1988.

On September 21, 1988, plaintiffs initiated a class action for declaratory and injunctive relief and requested an ex parte temporary restraining order prohibiting the destruction of the investigative files at issue in the case. Plaintiffs are lawyers, political activists, and politically active organizations who, it was alleged, have often

taken controversial and unpopular positions. Because of the positions they have taken, they allegedly have been and are targets of unconstitutional surveillance by the Albuquerque Police Department and subjects of unconstitutionally developed and maintained files. Plaintiffs alleged that this surveillance and the maintenance of such files caused a chilling effect on their First Amendment rights, the effect of which goes beyond subjective fear to include injury to their personal, political, and professional reputations.

A TRO was granted to prevent the destruction of the files at issue. On January 4, 1989, upon a motion filed by defendants and after a hearing, the district court dismissed the action for lack of standing and dissolved the previous TRO. Plaintiffs filed a motion for a stay pending appeal with the district court to prevent the destruction of the files. The court heard argument by telephone on January 6 and denied the stay. Plaintiffs informed the district court and defendants that they were going to seek a stay from the Tenth Circuit. Plaintiffs immediately filed a notice of appeal[1] and sought a stay from this court. A stay was granted by this court, but not before defendants had destroyed the majority of the files.[2] On February 8, 1989, this court issued an order preserving any undestroyed documents. Plaintiffs now appeal the district court's dismissal of their suit for lack of standing.

## DISCUSSION

■ Standing is a question of law that is reviewed de novo. *See United States v.*

*Leary*, 846 F.2d 592, 595 (10th Cir.1988). When reviewing the dismissal of a case upon a motion to dismiss for lack of standing, we treat all material allegations in the complaint as true and construe the complaint in favor of the plaintiff.[3] *See Pennell v. City of San Jose*, 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988); *American Mining Congress v. Thomas*, 772 F.2d 640, 650 (10th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 718 (1986).

■ To satisfy the standing requirement, plaintiffs must show that they "personally [have] suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quotations and citations omitted). The pivotal issue in this case is whether plaintiffs have adequately alleged an injury in fact.

■ In *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), the plaintiffs challenged the Army's surveillance of political activists because the fear that the information could be misused "chilled" plaintiffs' First Amendment rights. Plaintiffs did not allege any specific action of the Army directed against them nor any specific injury that they had suffered. Rather, they alleged only that the *existence* of the Army's intelligence gathering

---

1. Plaintiffs' January 6 notice of appeal improperly used the term *et al.* in designating all but one of the plaintiffs-appellants. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). On February 1, within the 30-day time limit prescribed by Fed. R.App.P. 4(a)(1), plaintiffs amended their notice of appeal and correctly listed all of the plaintiffs. Therefore we have jurisdiction to hear this appeal. *See Kowaleski v. Director, OWCP*, 879 F.2d 1173, 1175–76 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *see also Torres*, 487 U.S. at 317, 108 S.Ct. at 2409 ("Nor did petitioner seek leave to amend the notice of appeal within the time limits set by Rule 4.").

2. The investigative files were found in thirty-five boxes. Thirty-four of those boxes were destroyed. Because of the existence of the thirty-fifth box that was not destroyed, the action is not moot. In addition, this matter is not moot because the complaint alleges ongoing surveillance, and that cause of action would survive even the physical destruction of all of the previously accumulated files.

3. Because we do not need to go outside of plaintiffs' complaint to hold that plaintiffs have standing, the parties' attempts to supplement the record are unnecessary and their motions are denied.

system had a generalized chilling effect on their activities. The Court held that this was not sufficient to allege standing, concluding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird,* 408 U.S. at 13–14, 92 S.Ct. at 2325–26.

In *Meese v. Keene,* 481 U.S. 465, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987), the Supreme Court elaborated upon *Laird* and emphasized that in order to have standing the plaintiff must show that defendant's actions caused a direct injury to the plaintiff that was both distinct and palpable. *Id.* at 472, 107 S.Ct. at 1866. In contrast to *Laird,* however, the Court in *Meese* held that *harm to a plaintiff's reputation* in the community *is* a cognizable injury which affords a plaintiff standing to bring suit. *Id.* at 473–74, 107 S.Ct. at 1867–68.

The plaintiff in *Meese,* Barry Keene, challenged the designation of films as political propaganda under the Foreign Agents Registration Act. Keene was a California State Senator who wanted to show three Canadian films that had been designated as political propaganda. Keene argued that because the films had been designated as political propaganda, he could not show the films without harming his reputation in the community and his chances of reelection to public office. The Court specifically noted that "[i]f Keene had merely alleged that the appellation deterred him by exercising a chilling effect on the exercise of his First Amendment rights, he would not have standing to seek its invalidation." *Id.* at 473, 107 S.Ct. at 1867. However, because he had established injury to his reputation in the community as a result of action that would be applied directly to him, the Court found that Keene had standing to bring suit.

Here, however, the district court erroneously construed plaintiffs' complaint as alleging only a general chilling of their rights because of a suspicion of the existence of improper police investigations. In plaintiffs' complaint they allege the following:

34. The persons and organizations subject of the above described focused action, including *plaintiffs* and the plaintiff class, *were so targeted ... and ... have been subjected to and harmed by a policy or practice* that systematically violates citizens' rights.

35. [The] APD intelligence units have engaged and presently continue to engage in all of the following activities [various surveillance activities described]

....

36. The conduct described above has been in many instances based on plaintiffs' innocent behavior *subjecting them to illegal surveillance activities....* Defendants' actions and those of their agents have caused and continue to cause a chilling effect on plaintiffs' first amendment association and free expression rights, the effect of which causes harm to plaintiffs beyond subjective fear, *including but not limited to injury to personal, political and professional reputations....*

....

41. Defendants ... acted under color of law, ... knowingly and purposely with the specific intent to deprive plaintiffs and members of the class of the above described constitutional rights....

42. The above described actions and omissions of defendants and their agents are the direct and proximate causes of the injuries complained of by plaintiffs herein....

R.Doc. 1 at ¶¶ 34–36 & 41–42 (emphasis added). Therefore, plaintiffs allege more than a chilling of their First Amendment rights; they also allege harm to their personal, political, and professional reputations in the community. More importantly, the plaintiffs in this case allege that they were the actual targets of the illegal investigations. Thus, *Laird* is easily distinguishable because there the plaintiffs alleged only that they experienced a generalized chilling effect by their mere knowledge of the existence of the Army's data-gathering system without alleging any specific Army action against them. *Laird,* 408 U.S. at 3, 9, 13, 92 S.Ct. at 2321, 2323,

2325.[4] *See Clark v. Library of Congress,* 750 F.2d 89, 92–93 (D.C.Cir.1984); *Ozonoff v. Berzak,* 744 F.2d 224, 229 (1st Cir.1984); *cf. Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 522 (9th Cir.1989).[5]

In addition, the complaint overcomes the concern expressed in *City of Los Angeles v. Lyons,* 461 U.S. 95, 102–03, 103 S.Ct. 1660, 1665–66, 75 L.Ed.2d 675 (1983), and *O'Shea v. Littleton,* 414 U.S. 488, 495–97, 94 S.Ct. 669, 675–77, 38 L.Ed.2d 674 (1974), that a plaintiff seeking prospective relief must show more than past harm or speculative future harm. The plaintiff in *Lyons* alleged that in the past he had been subject to an illegal chokehold by the police and that in the future, if stopped by the police, he could again be subjected to an illegal chokehold. However, the Court found that the allegation of past harm did not confer jurisdiction to seek prospective relief and the allegation of future harm was speculative in nature and did not present a present, live controversy for the Court to address. *Id.* 461 U.S. at 104–05, 103 S.Ct. at 1666–67. The plaintiffs in *O'Shea* challenged an alleged pattern and practice of illegal administration of the Alexander County (Illinois) criminal justice system. The Court held that the plaintiffs did not have standing because it was mere speculation and conjecture that the plaintiffs would be arrested and again subjected to criminal proceedings. *O'Shea,* 414 U.S. at 497, 94 S.Ct. at 676.

In contrast to the speculative future harm alleged in *Lyons* and *O'Shea,* plaintiffs in this case allege that defendants continue to conduct illegal surveillance of plaintiffs' activities. *See, e.g.,* R.Doc. 1 ¶¶ 28, 35, 37. Therefore, plaintiffs' cause of action should not have been dismissed for lack of standing because they have alleged a cognizable, continuing injury which presents a case or controversy for the court to consider.

Nothing in this opinion would preclude defendants from seeking a motion for summary judgment for lack of standing if plaintiffs are unable to establish a factual basis for their complaint after they have been afforded a fair opportunity to develop the facts. *See Haase v. Sessions,* 835 F.2d 902, 906–07 (D.C.Cir.1987). As noted previously, a ruling on a motion to dismiss for lack of standing requires the court to construe all material allegations of the complaint as true, and, although the court may require plaintiff to supply additional information, discovery is not required. *See Haase,* 835 F.2d at 906–08. If plaintiffs adequately allege injury in their complaint, discovery would presumably occur as the case develops and could be ordered where parties have filed motions for summary judgment. *See Haase,* 835 F.2d at 907 (citing *Wilderness Society v. Griles,* 824 F.2d 4, 17 (D.C.Cir.1987)). Discovery is particularly appropriate in this case because plaintiffs do not have access to the investigative files which contain the details of the specific investigations conducted by the defendants.

The importance of permitting discovery when crucial information is in the exclusive control of the defendant was discussed in *Palmer v. Chicago,* 755 F.2d 560, 573 (7th Cir.1985). In *Palmer,* plaintiffs, who had been convicted of felonies, challenged the nondisclosure of secret files which allegedly contained exculpatory information about the plaintiffs. The Seventh Circuit, in determining that the plaintiffs had standing to seek a preliminary injunction to preserve such secret "street files," explained:

> The defendants cannot argue on one hand that the plaintiffs have failed to prove injury and, on the other hand, that the plaintiffs are not entitled to the very evidence that is essential in proving that

---

**4.** We need not, and do not, address whether injury to reputation alone, without the plaintiff being the subject of the action complained of, would be *sufficient* to allege standing.

**5.** Because we have found that plaintiffs sufficiently alleged that they were the target of the

illegal investigations, plaintiffs' argument that they should be granted standing because they are members of an identifiable group of persons vulnerable to the asserted illegal investigations need not be addressed. *See* Plaintiffs' Brief-in-Chief at 17–18.

injury. Given the unique situation presented in this case, where the plaintiffs' evidence is in the exclusive possession of the defendants, the subclass A plaintiffs, at best, can only allege injury resulting from the defendants' conduct. The plaintiffs must await production and review of the actual "street files" until they can introduce evidence to prove their allegations of harm. It is clear that the subclass A plaintiffs will have no meaningful opportunity to prove their allegations unless the existing "street files" are preserved and the plaintiffs are permitted access to those files.

*Palmer*, 755 F.2d at 573.

As in *Palmer*, the lack of access to the investigative files in this case prevented plaintiffs from alleging with more specificity that they were targets of the alleged illegal investigations. Dismissal prior to discovery would be inequitable under these facts because plaintiffs have alleged a direct harm caused by defendants' actions. Their suit should be heard unless, after they have had an opportunity to develop the facts, they cannot prove any set of facts that would supply a basis for the allegations in their complaint. If there is no factual basis for plaintiffs' allegations, there will be time enough later for the court to consider whether sanctions are warranted.

We REVERSE the district court's January 4, 1988 order dismissing this case for lack of standing and REMAND the case for further proceedings consistent with this opinion.