The STATE of Wyoming, ex rel., Mike SULLIVAN as Governor and Joseph B. Meyer as Attorney General, Plaintiffs–Appellants,

v.

Manuel LUJAN, in his official capacity as Secretary of the United States Department of the Interior; and the United States Department of the Interior; Laurance S. Rockefeller, an individual; The Sloan–Kettering Institute for Cancer Research, a non-profit New York corporation; and Reserve Coal Properties Company, a Delaware corporation, Defendants–Appellees.

No. 91–8019.

United States Court of Appeals, Tenth Circuit.

July 7, 1992.

Vicci M. Colgan, Sr. Asst. Atty. Gen. (Joseph B. Meyer, Atty. Gen., with her on the brief), Cheyenne, Wyo., for plaintiffs-appellants.

Ellen J. Durkee, Attorney, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. (Richard B. Stewart, Asst. Atty. Gen., Washington, D.C., Richard A. Stacy, U.S. Atty., Carol A. Statkus and Maynard Grant, Asst. U.S. Attys., Cheyenne, Wyo., Fred R. Wagner and Martin W. Matzen, Attorneys, Environment & Natural Resources Div., U.S. Dept. of Justice, Mark D. Etchart, Office of the Solicitor, Dept. of the Interior, Washington, D.C., Lyle K. Rising, Office of the Regional Solicitor, Dept. of the Interior, Denver, Colo., with her on the brief), for defendants-appellees Manuel Lujan, in his official capacity as Secretary of the U.S. Dept. of the Interior, and the U.S. Dept. of the Interior.

Richard M. Davis, Jr. (Kate M. Fox, with him on the brief), of Burgess, Davis, Carmichael & Cannon, Sheridan, Wyo., for defendant-appellee Reserve Coal Properties Co.

Gaines Gwathmey, III, of Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Steven B. Rosenfeld and Daniel G. Cort, of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Marcelle Shoop and Jack D. Palma, II, of Holland & Hart, Cheyenne, Wyo., with him on the brief), for defendant-appellee The Sloan–Kettering Institute for Cancer Research.

Henry L. Diamond and Christopher W. Mahoney, of Beveridge & Diamond, Washington, D.C., and Carl L. Lathrop and J. Kent Rutledge, of Lathrop & Rutledge, Cheyenne, Wyo., filed a brief, for defendant-appellee Laurance S. Rockefeller.

SEYMOUR, SETH and ALDISERT,* Circuit Judges.

ALDISERT, Circuit Judge.

The State of Wyoming appeals the district court's determination that it lacked standing to challenge the Secretary of the Interior's completed exchange of federally owned coal in the Ash Creek and Youngs Creek federal coal tracts in Sheridan County, Wyoming, for the JY Ranch conservation easement in the Grand Teton National Park.

This court is no stranger to litigation involving the Ash Creek tract. In *Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 243–44 (10th Cir.1991) (*Ash Creek I*), Ash Creek Mining Company challenged the Secretary's decision to set aside the Ash Creek Coal Leasing Tract from competitive coal leasing and to designate it for exchange for the Whitney Benefits Tract. We held that Ash Creek's claim was not ripe for decision because Ash Creek had failed to show that the Department's proposed exchange constituted "final agency action" under the Administrative Procedure Act, 5 U.S.C. § 704. We did not reach the question of standing.

In a companion case filed this date, however, we did meet the question. We held that in a challenge to a completed exchange of federal coal filed in the district court as a companion action to the within proceedings, Ash Creek Mining Company lacked Article III standing to oppose the completed exchange. *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868 (10th Cir.1992) (*Ash Creek II*). We reach the same conclusion in this appeal and affirm the judgment of the district court.

The district court had subject matter jurisdiction based on 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. The appeal was timely filed under Rule 4(a), Fed.R.App.P.

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

The district court held that the State of Wyoming lacked Article III standing to challenge the exchange of federal coal located in Sheridan County for the JY Ranch conservation easement. Our task on review is to decide whether the court erred as a matter of law. Other issues presented involve prudential limitations on a federal court's exercise of judicial power and raise questions as to the State of Wyoming's standing to assert claims under the National Environmental Policy Act and the Federal Land Policy and Management Act.

■ We review *de novo* the grant of a motion to dismiss for lack of standing. *Riggs v. City of Albuquerque*, 916 F.2d 582, 584 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991). A motion to dismiss is properly granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief. *Huxall v. First State Bank*, 842 F.2d 249, 251 (10th Cir.1988). We must construe the complaint in favor of the plaintiff, accepting as true all material allegations. *American Mining Congress v. Thomas*, 772 F.2d 640, 650 (10th Cir. 1985) (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975)), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 718 (1986).

## I.

The facts are undisputed. On August 9, 1985, Laurance S. Rockefeller agreed to exchange a conservation easement on his ranch, known as the JY Ranch, located within the Grand Teton National Park in Northeast Wyoming, for federal coal owned by the Department of the Interior. In December 1987, Rockefeller donated the JY Ranch conservation easement to The Sloan–Kettering Institute for Cancer Research, a non-profit organization, which then became the exchange proponent.

The Bureau of Land Management (hereinafter "the Bureau") subsequently prepared an environmental assessment of the proposed exchange. The Bureau concluded that the exchange presented no significant environmental impact and determined that an environmental impact statement was not necessary. On November 3, 1989, the Bureau published a Notice of Realty Action in the *Federal Register* outlining the proposed exchange of 2,560 acres of federal coal located in the Ash Creek and Youngs Creek federal coal tracts in Sheridan County, Wyoming, for 1106.49 acres of the JY Ranch conservation easement. The Notice provided for public comment/protest within 45 days.

The State of Wyoming and others filed oral and written protests to the exchange. On May 10, 1990, Sloan–Kettering conveyed the JY Ranch conservation easement to the United States by warranty deed. On May 11, 1990, the Assistant Secretary of the Interior for Land and Minerals Management dismissed the protests filed in response to the Notice. On the same date, the Bureau accepted title to the conservation easement on behalf of the National Park Service and issued Sloan–Kettering a patent granting title to the coal. Sloan–Kettering subsequently sold the coal rights to Reserve Coal Properties Company.

### A.

On July 10, 1990, the State of Wyoming, ex rel., Mike Sullivan as Governor and Joseph B. Meyer as Attorney General (hereinafter "the State"), filed a four-count complaint in federal district court against the Secretary of the Interior, the Department of the Interior, Rockefeller, Sloan–Kettering, Consolidation Coal Company and Reserve Coal Properties seeking judicial review of the Secretary's action and requesting that the exchange be voided. The first three counts alleged violations of the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701, *et seq.*, based on the Secretary's failure (1) to act in the public interest, (2) to satisfy the requirement that the exchanged lands be of equal value and (3) to follow the Bureau's internal guidelines respecting land exchanges. The fourth count alleged that the Secretary had violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.*, because the environmental assessment was inadequate and because an impact statement should have been prepared.

The State alleged that it had been injured by the removal of the coal from its "coal bank." It claimed that if the coal properties had been leased through the competitive leasing system, the Mineral Leasing Act (MLA), 30 U.S.C. §§ 191, 207(a), would have entitled the State to one-half of the royalty payment on the lease, the payment to be no less than 12.5% of the coal's value. The State asked for an order setting aside the patent and voiding the transfer of the coal from Sloan–Kettering to Reserve Coal Properties.

### B.

All defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and on March 15, 1991, the district court dismissed the action for lack of standing. The court determined that it could "fashion no order which would redress the injuries claimed by plaintiff; there is no 'substantial nexus between the relief requested and the elimination of the plaintiff's injury.'" Dist.Ct.Order at 6, 1991 WL 352420 (quoting *Glover River Org. v. United States Dep't of Interior*, 675 F.2d 251, 255 (10th Cir.1982) (footnote omitted)). The court observed that "[i]t is far from 'concrete and certain', that, if the decision of the Secretary were to be reversed, the coal would ever be open to competitive leasing." *Id.* at 6–7 (citation omitted).

As an additional ground for rejecting the claim under the Environmental Policy Act, the district court determined that the State's interest did not fall within the statute's "zone of interests." The State alleged that the monies lost by the Secretary's failure to lease the coal would have gone to roads, highways and other public facilities, necessarily resulting in an impact on the environment. The court rejected this purported injury, noting that such an environmental impact would have resulted from state law and not from the Secretary's actions. *Id.* at 7. The court also determined that neither the Land Policy and Management Act, nor the Mineral Leasing Act, nor any other statute grants the State a right to contest the Secretary's disposal of federal coal in a manner affecting the statutory royalty sharing agreement. *Id.* The State then filed this appeal.

### II.

In *Ash Creek II*, filed this date, we summarized the precepts controlling constitutional standing. We repeat them here. Article III of the Constitution limits the "judicial power" of federal courts to the resolution of "cases" and "controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). One of the requirements of a "case" or "controversy" is that the plaintiff have "standing" to challenge the action sought to be adjudicated in the lawsuit. *Id.*

The Court has recently summarized the requirements for standing:

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" *Whitmore* [*v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) ] (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 [103 S.Ct. 1660, 1665, 75 L.Ed.2d 675] (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42 [96 S.Ct. 1917, 1926, 48 L.Ed.2d 450] (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 38, 43 [96 S.Ct. at 1924, 1926–27].

The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each

element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted) (footnote omitted).

Thus, as a constitutional minimum, "the plaintiff must allege some concrete injury, whether actual or threatened, and some chain of causation linking that injury to the challenged actions of the defendant." *Glover River,* 675 F.2d at 253 (footnote omitted). The plaintiff may not convert the federal courts into "publicly funded forums for the ventilation of public grievances." *Valley Forge,* 454 U.S. at 473, 102 S.Ct. at 759.

■ To establish "injury in fact," the plaintiff must show "a distinct and palpable injury to itself." *Glover River,* 675 F.2d at 254. An abstract injury is not enough; " '[t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' ' " *Id.* (quoting *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974)). Although "[a]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court," *Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984), courts generally will find injury in fact if the plaintiff can demonstrate a plausible benefit. In *Watt v. Energy Action Educ. Found.,* 454 U.S. 151, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981), for example, the Court held that the State of California had standing to challenge the Secretary of the Interior's failure to comply with a statute requiring it to experiment with different royalty systems in leasing offshore gas and oil production rights. Although a judgment would require the Secretary only to perform the experiments and would not guarantee the State any royalties, the Court determined that the State's loss of an opportunity for benefit constituted injury in fact. *Id.* at 160–62, 102 S.Ct. at 212–13.

To satisfy the "redressability" prong of the standing test, the plaintiff must demonstrate that a " 'substantial likelihood' [exists] that the relief requested will redress the injury claimed." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595 (1978); *Glover River,* 675 F.2d at 254.

### III.

The district court determined that the State lacked Article III standing because it had failed to satisfy both the injury in fact and redressability prongs of the test. The appellees argue that the State has not demonstrated an injury in fact because, at most, it has lost an opportunity to receive royalties from the Sheridan County federal coal—a "conjectural" or "hypothetical" injury insufficient to confer standing. The appellees also argue that even if the court grants the State's requested relief and sets aside the exchange, there is no guarantee that the Secretary ever will exercise his discretion to offer the coal for competitive leasing, especially now that the coal market is completely glutted.

As we stated in *Ash Creek II,* this court is no stranger to matters involving Article III standing. In *Glover River,* the plaintiffs challenged the Secretary's listing of the leopard darter as an endangered species. They claimed that this listing precluded them from promoting a flood control project on an Oklahoma river. 675 F.2d at 252–53. The plaintiffs sought an injunction requiring the Secretary to prepare an environmental impact statement and an order staying the listing until the statement was completed. We held that the plaintiffs had demonstrated injury in fact but had failed to meet the causation and redressability requirements for standing because "[e]ven if the preparation of [the statement] should lead to removal of the leopard darter from the threatened species list, this would not ensure the funding or construction of the projects" they desire. *Id.* at 255.

In *Oklahoma Hosp. Ass'n v. Oklahoma Publishing Co.*, 748 F.2d 1421 (10th Cir. 1984), *cert. denied*, 473 U.S. 905, 105 S.Ct. 3528, 87 L.Ed.2d 652 (1985), a publishing company sought access to documents subject to protective orders entered in a separate action between the Oklahoma Hospital Association and the Oklahoma Department of Human Services. We determined that the publishing company lacked standing because its injuries might not be redressed by a favorable court ruling. We explained that even if the protective orders were removed, the parties to the original lawsuit may exercise their discretion not to reveal those documents to the publishing company. *Id.* at 1424–25.

■ As stated by the court in *National Wildlife Fed'n v. Hodel*, 839 F.2d 694, 703–04 (D.C.Cir.1988), "[s]tanding jurisprudence is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief." Based on the facts of this case, as well as on the principles set forth in *Glover River* and *Oklahoma Hospital*, we are persuaded to affirm the district court's ruling that the State lacked standing to challenge the JY Ranch exchange.

### IV.

Although the State arguably has shown a plausible benefit sufficient to demonstrate injury in fact, *see Watt*, 454 U.S. at 160–62, 102 S.Ct. at 212–13, we conclude that the relief requested will not redress the threatened loss of royalties. The State's case is a conjecture based on speculation that is bottomed on surmise. It ostensibly asserts public policy concerns, but on final analysis, the State's interest begins and ends with the royalties it expected to receive had the Secretary chosen to offer the coal for competitive leasing. This interest founders on too many contingencies for us to conclude that it meets the constitutional requirement of redressability.

The conjecture is that if this exchange is upset, somehow the Secretary will exercise his discretion and release these lands for competitive leasing. The federal courts do not have the power to order competitive

leasing. By law, that discretion is vested absolutely in the federal government's executive branch and not in its judiciary. A favorable ruling in this case will not guarantee the State one nickel of coal leasing royalties from these lands. There is only speculation and surmise that the State ever will receive any such royalties.

Assuming that the State has demonstrated some actual or threatened injury that is fairly traceable to the challenged action, it has not shown, and indeed cannot show, that the injury is " 'likely to be redressed by a favorable decision' " in this case. *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758–59 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)). We conclude, therefore, that the State has not established Article III standing to assert an economic loss claim under the Land Policy and Management Act and the Environmental Policy Act. We need not reach the question of prudential limitations on a federal court's exercise of its judicial power with respect to the Environmental Policy Act claim.

### V.

■ In addition to the claimed injuries flowing from the threatened loss of royalty income, the State argues that it has been deprived of an alleged statutory right to have the interests of "state and local people" considered when the Secretary determines whether a land exchange proposal is in the public interest. We are not at all certain that this particular Federal Land Policy and Management Act claim falls within the rubric of constitutional or prudential standing. Assuming Article III standing on this issue, however, we conclude that the State has failed to surmount the prudential limitations on a federal court's exercise of judicial power.

We agree with the appellees that the State lacks prudential standing under 43 U.S.C. § 1716(a) to advance the interests of "state and local people" because (1) the State must assert its own legal rights and interests, and not those of third parties,

and (2) the State's complaint does not fall within the "zone of interests" the Act seeks to protect. *See Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. at 759–60.

■ The federal appellees contend, and we agree, that the State does not have standing as a *parens patriae* to bring an action on behalf of its citizens against the federal government because the federal government is presumed to represent the State's citizens. In *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), the Supreme Court observed that a state may sue as a *parens patriae* on behalf of its citizens when it "has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general," as long as the state is more than a nominal party. *Id.* at 607–08, 102 S.Ct. at 3269. This means that a state may sue "under federal statutes creating benefits or alleviating hardships." *Id.* at 608, 102 S.Ct. at 3269. The "State does have an interest, independent of the benefits that might accrue to any particular individual, in assuring that the benefits of the federal system are not denied to its general population." *Id.*

The Court stated in a footnote, however, that "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government." *Id.* at 610 n. 16, 102 S.Ct. at 3270 n. 16 (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485–86, 43 S.Ct. 597, 600–01, 67 L.Ed. 1078 (1923)). Courts also have recognized that a " 'generalized grievance that the [government] is not acting in a way in which [the State] maintains is in accordance' with federal laws ... is insufficient to demonstrate standing." *Nevada v. Burford*, 918 F.2d 854, 857 (9th Cir.1990) (quoting *Nevada v. Burford*, 708 F.Supp. 289, 295 (D.Nev. 1989)), *cert. denied*, —— U.S. ——, 111 S.Ct. 2052, 114 L.Ed.2d 458 (1991).

The State responds that the *parens patriae* doctrine is inapplicable here because the Act specifically confers standing. It argues that section 206(a) of the Act, 43 U.S.C. § 1716(a), authorizes the Secretary to exchange tracts of land or interests in land where the Secretary "determines that the *public interest* will be well served by making that exchange." *Id.* (emphasis added).

We are not persuaded that Congress intended that the State become an express beneficiary under the Act, ousting the Secretary of the Interior from his authority and responsibility to define the contours of "public interest." The statute allocates to the Secretary, and not to the State of Wyoming, for itself or for its citizens, the authority and responsibility of determining whether "the public interest will be well served by making that exchange." We accept the argument advanced by the federal appellees that under the principles announced in *Snapp*, the State is not the appropriate party to protect that interest. Thus, to the extent that the State attempts to assert the interests of "state and local people," it lacks prudential standing under the Federal Land Policy and Management Act.

### VI.

We have considered all of the appellees' contentions, and for the foregoing reasons, the judgment of the district court is

AFFIRMED.