**REVISED**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-60036

_____

PACIFIC GAS AND ELECTRIC COMPANY;
SOUTHERN CALIFORNIA GAS COMPANY;
SOUTHERN UNION GAS COMPANY,

                                        Petitioners,

EL PASO MUNICIPAL CUSTOMER GROUP,

                                        Intervenor,

                        versus

FEDERAL ENERGY REGULATORY COMMISSION,

                                        Respondent,

COLORADO INTERSTATE GAS COMPANY (CIG);
SOUTHERN CALIFORNIA EDISON COMPANY;
ANR PIPELINE COMPANY; SALT RIVER PROJECT;
EL PASO NATURAL GAS COMPANY;
MERIDIAN OIL INC.'S,

                                        Intervenors.

*****************************************************************

No. 96-60039

NEW MEXICO ENERGY, MINERALS AND
NATURAL RESOURCES DEPARTMENT;
COMMISSIONER FOR PUBLIC LANDS FOR
THE STATE OF NEW MEXICO,

                                        Petitioners,

                        versus

FEDERAL ENERGY REGULATORY COMMISSION,

                                        Respondent.

_____

Petitions for Review of an Order of the
Federal Energy Regulatory Commission

_____

February 19, 1997

Before HIGGINBOTHAM, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This case requires us to decide whether the Natural Gas Act supplies the Federal Energy Regulatory Commission with jurisdiction over gathering facilities operated by a corporation that is wholly-owned by an interstate natural gas pipeline company. We affirm FERC's conclusion that these gathering facilities are beyond its regulatory reach, notwithstanding the fact that the gatherer is a subsidiary of a pipeline company that transports gas in interstate commerce.

I.

El Paso Natural Gas Co., one of the nation's largest natural gas pipeline companies, owns and operates twenty-nine gathering facilities in New Mexico, Colorado, Oklahoma, and Texas. Because some of these facilities are subject to certificates of public convenience and necessity, El Paso sought FERC's permission in 1994 to abandon its gathering facilities and convey them, along with treating and processing facilities, to El Paso Field Services Co., which it would own in its entirety. El Paso established a Field Services Division in 1991, and it explained in its FERC application that conveying facilities to the liberated Field Services Co. was the culmination of years of corporate reorganization.

After notice of El Paso's application was published in the Federal Register, forty-six parties filed motions to intervene. Some of the intervenors sought to prevent El Paso from using Field Services as a means of escaping FERC regulation. FERC issued El

2

Paso's abandonment order on September 13, 1995, effective January 1, 1996. According to FERC, it "does not have jurisdiction over companies such as Field Services that perform only a gathering function." El Paso Natural Gas Co., 72 FERC ¶ 61,220, at 62,014 (Sept. 13, 1995). The order imposed two conditions on Field Services: (1) it had to amend its tariff to guarantee nondiscriminatory access to the facilities and arm's-length dealings between El Paso and Field Services, and (2) it had to offer existing customers a two-year default contract that would preserve the status quo.[1] FERC refused to hold a full evidentiary hearing on the matter and declined the intervenors' request to examine whether Field Services would face sufficient competition. FERC did, however, reserve the right to assert its jurisdiction over Field Services if El Paso and Field Services failed to maintain their separate corporate identities. FERC denied rehearing in a written opinion on November 29, 1995.

Five intervenors have filed this appeal and asked us to invalidate the abandonment order. Three are local distributors of natural gas who use the El Paso system: Pacific Gas & Electric Co., Southern California Gas Co., and Southern Union Gas Co. The other two are units of the State of New Mexico: the New Mexico Department

---

[1] Because El Paso has not challenged FERC's power to require Field Services to offer default contracts, that issue is not part of this appeal. Cf. Conoco, Inc. v. FERC, 90 F.3d 536, 553 (D.C. Cir. 1996) ("[W]e conclude that the Commission did not adequately explain its jurisdiction to condition approval of the spin-down of gathering facilities on a default contract mechanism . . . ."), petition for cert. filed, 65 U.S.L.W. 3354 (U.S. Oct 31, 1996) (No. 96-686).

of Energy, Minerals, and Natural Resources; and the Commissioner of Public Lands for the State of New Mexico. Many of the remaining intervenors have aligned themselves with these parties. The appellants argue that allowing El Paso's wholly-owned subsidiary to operate El Paso's gathering facilities without any regulatory oversight and without any significant competition will lead to unreasonably high natural gas prices.

## II.

As a threshold matter, we must ensure that the local distribution companies and the New Mexico appellants have standing to challenge FERC's order. According to El Paso, the abandonment order does not threaten these appellants with any concrete, imminent injury. The local distribution companies, on the other hand, insist that they will inevitably be forced to pay higher gas prices if FERC ends its regulation of the rates charged by the gathering facilities through which the gas must pass. The New Mexico appellants assert that they have an interest not only in protecting their citizens from monopolistic gathering facilities, but also in avoiding the expense of imposing their own regulation of natural gas to compensate for FERC's decision to bow out of the regulation of gatherers affiliated with interstate pipelines. See Florida v. Weinberger, 492 F.2d 488, 494 (5th Cir. 1974) ("[T]he State of Florida has standing, arising from its clear interest . . . in being spared the reconstitution of its statutory [system for licensing nursing homes].").

4

In addition to the constitutional and prudential standing limitations, the Natural Gas Act itself specifies who may challenge FERC's orders issued under the Act. See 15 U.S.C. § 717r(a) (granting the rights to seek rehearing before FERC and review in a circuit court to "aggrieved" states, municipalities, and state commissions); 15 U.S.C. § 717r(b) (granting the same rights to "aggrieved" parties to FERC proceedings). A party has not been "aggrieved" by a FERC decision unless its injury is "present and immediate." Tenneco, Inc. v. FERC, 688 F.2d 1018, 1022 (5th Cir. 1982). Case law has not established how this test for standing might differ from the test developed under Article III. See, e.g., American Agriculture Movement v. Board of Trade, 848 F. Supp. 814, 819 n.6 (N.D. Ill. 1994) (suggesting that standing cases decided under § 717r do not always provide solid authority for standing cases decided under Article III), aff'd in part and rev'd in part, 62 F.3d 918 (7th Cir. 1995).

El Paso directs our attention to Williams Gas Processing Co. v. FERC, 17 F.3d 1320 (10th Cir. 1994), another case in which an interstate pipeline company created a wholly-owned subsidiary to take over its gathering facilities and thus escape regulation. FERC responded to the pipeline's application to abandon the facilities in much the same way that FERC responded to El Paso's application: it granted the request, placed no rate restrictions or reporting obligations on the affiliate, and explained that its jurisdiction over the affiliate would arise if the parent and the affiliated subsidiary failed to subscribe to an open-access policy.

5

Natural gas producers and shippers intervened in the FERC proceedings and ultimately petitioned for review in the Tenth Circuit because they did not want to pay an unregulated entity for gathering and transportation costs. The court held that these intervenors did not have standing under § 717r(b) because they could not show a looming, unavoidable threat of injury from the FERC action:

> There is no evidence in this record that Chevron and Conoco have suffered, or will unavoidably suffer, an economic injury as a result of the Commission's orders. Their fear that Williams will charge unreasonable rates is only speculation for now, and even if it materializes, they can challenge the reasonableness of Williams's rates under section 5 [of the Natural Gas Act], 15 U.S.C. § 717d.

Williams, 17 F.3d at 1322.

We question whether the appellants could make use of § 717d at some later time to challenge unreasonably high rates. That section applies only to rates charged by natural gas companies that make sales within FERC's jurisdiction. In both Williams and in this case, FERC decided that affiliated gathering companies are not natural gas companies unless they act "in connection with" their parent pipelines. Section 717d would be available to these appellants if Field Services were to charge rates that discriminated against entities other than El Paso. But under FERC's order, there would be no jurisdiction over Field Services on the basis of unreasonably high rates as such. Furthermore, Williams fails to take account of any injury that might come from terminating the affiliated gatherer's duty to report rates. Unless the gatherer has such a duty, the distributors must rely on FERC's

6

oversight to ensure that the gatherer does not abuse its potentially monopolistic power.

In addition to Williams, El Paso relies on Shell Oil Co. v. FERC, 47 F.3d 1186, 1200-03 (D.C. Cir. 1995). In that case, Shell Oil objected to FERC's conclusion that the Interstate Commerce Act, which provides rate protection and tariff requirements, does not apply to a pipeline system located entirely on the Outer Continental Shelf. Shell obtained access to the pipeline in the FERC proceeding under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1334(f). Shell appealed because it objected to FERC's further conclusion that the Interstate Commerce Act does not grant FERC jurisdiction over pipelines that lie entirely on the outer continental shelf. The D.C. Circuit held that Shell did not have standing to pursue such an appeal because "[t]he risk of injury . . . flows from the legal rationale employed by the Commission in its Order, not from the denial of relief actually sought by Shell before the agency." Shell Oil, 47 F.3d at 1201. The court went on to reject Shell's contention that "the hypothetical imposition of unreasonable but non-discriminatory rates suffices for purposes of finding injury in fact." Id. at 1202 n.33. This case is different from Shell Oil because the local distribution companies and the New Mexico appellants have argued all along the same thing they are arguing here: that FERC must regulate Field Services under the Natural Gas Act. Furthermore, Shell's potential injuries from rate increases were more speculative than the potential injuries in this case because a group of pipeline owners competed among themselves

7

to sell capacity on the pipeline, and FERC determined that the pipeline was underutilized even with Shell's purchase of pipeline capacity. Id. at 1202. Other cases cited by El Paso are also distinguishable. See Colorado Interstate Gas Co. v. FERC, 83 F.3d 1298, 1301 (10th Cir. 1996) (holding that a natural gas company that had agreed to report its gathering rates and provide non-discriminatory access was not "aggrieved"); State ex rel. Sullivan v. Lujan, 969 F.2d 877, 882 (10th Cir. 1992) (holding that Wyoming did not have standing to challenge the Interior Department's exchange of land rich in coal because it could not show that the Department would have leased the land for coal mining and thus have entitled Wyoming to royalties); Panhandle Producers v. Economic Regulatory Admin., 847 F.2d 1168, 1173-74 (5th Cir. 1988) (holding that an association of natural gas producers did not have standing to challenge the ERA's failure to refer its policy of authorizing imports of Canadian gas to FERC because the association was not within the statute's zone of interest); Tenneco, Inc. v. FERC, 688 F.2d 1018, 1022 (5th Cir. 1982) (holding that a natural gas pipeline company did not have standing to challenge FERC's decision to transform an adjudicatory hearing into an off-the-record investigation because the decision did not adjudicate facts or deprive the pipeline of property).

We hold that the local distribution companies and the New Mexico appellants have standing to challenge FERC's abandonment order. When an agency deregulates a major portion of a distributor's supply structure, the threat to the distributor's

8

economic security is not merely speculative. It is likely that Field Services will charge a higher price than it would have under FERC regulation. Thus, these appellants have a considerable interest in the regulatory status of affiliated gatherers and will be unable to challenge FERC's treatment of the issue if FERC's position that affiliated gatherers are outside of its jurisdiction becomes established precedent. We have recognized a similar principle in affording standing to pipeline companies facing a high risk of economic injury by FERC's treatment of their competitors. Pacific Gas Transmission Co. v. FERC, 998 F.2d 1303, 1307 n.4 (5th Cir. 1993). Down-stream gas distributors are within the zone of interest contemplated by the rate regulation provisions of the Natural Gas Act. See Interstate Natural Gas Co. v. Federal Power Comm'n, 331 U.S. 682, 693 (1947). And similar cases have either explicitly or implicitly found that entities other than direct competitors can have a sufficient interest in a pipeline's regulatory status to confer standing. See, e.g., Conoco, Inc. v. FERC, 90 F.3d 536 (D.C. Cir. 1996) (allowing producers to challenge a pipeline's spin-off of an affiliated gathering company), petition for cert. filed, 65 U.S.L.W. 3354 (U.S. Oct 31, 1996) (No. 96-686); Mississippi Valley Gas Co. v. FERC, 68 F.3d 503, 507-08 (D.C. Cir. 1995) (finding that a local distribution company had standing to challenge FERC's adjustment of a pipeline's rates).

## III.

We review FERC's abandonment order to ensure that it is "based on a permissible construction" of the Natural Gas Act; "a court may

9

not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44, 104 S. Ct. 2776, 2782 (1984). An interpretation is reasonable so long as it is not "arbitrary, capricious, or manifestly contrary to the statute." Id. at 844, 104 S. Ct. at 2782. In this case, we must determine whether FERC imposed a reasonable construction on the description of its statutory powers in sections four and five of the Natural Gas Act, 15 U.S.C. §§ 717c(a) & 717d(a), which allow FERC to regulate prices charged "in connection with" the transportation or sale of natural gas that is subject to FERC jurisdiction.

The local distribution companies and the New Mexico appellants rely principally on language in Northern Natural Gas Co. v. FERC, 929 F.2d 1261, 1269 (8th Cir.), cert. denied, 112 S. Ct. 169 (1991). The Northern Natural court held that FERC may regulate gathering facilities owned by natural gas companies in spite of the fact that gathering facilities are explicitly excluded from FERC's jurisdiction under 15 U.S.C. § 717(b). Such regulation, the court reasoned, was necessary to perform FERC's role of preventing unfair trade practices by monopolistic pipelines under §§ 717c & 717d. 929 F.2d at 1273. It explained that "it would be inconsistent to hold that the Commission may not regulate rates for transportation over a pipeline's own gathering facilities performed in connection with admittedly jurisdictional interstate transportation." Id. at 1269.

10

We do not find this language controlling in this case. Northern Natural did not involve an affiliated gatherer. According to Conoco, Inc. v. FERC, 90 F.3d 536 (D.C. Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3354 (U.S. Oct 31, 1996) (No. 96-686), that fact makes all the difference. In Conoco, a case decided after the parties in this case submitted the appellate brief, a pipeline created a corporate subsidiary to take over its gathering facilities so that it could "operate on a level playing field with . . . independent gatherers unregulated by the Commission." 90 F.3d at 541. As in this case, FERC allowed the pipeline to abandon the facilities to the affiliate so long as it included equal-access provisions in its tariff and offered customers a default contract to preserve the status quo for at least two years. The court held that FERC's order was not an arbitrary and capricious interpretation of the statute because transportation and sales by truly independent gathering affiliates could be understood as not "in connection with" transportation or sales by interstate pipelines. Id. at 547.

Our task is not to determine whether the regulatory structure that FERC gleans from the Natural Gas Act is the most sensible. There is room to question whether the formality of creating a separate corporate entity justifies turning a heavily regulated gathering facility into a facility that is outside of FERC jurisdiction. The appellants express a legitimate concern that FERC's reading gives little assurance that affiliated gatherers will in fact act independently of the pipelines that own them.

11

Although FERC states that it will re-assert its jurisdiction if the gatherers adopt rate or access practices that discriminate in favor of their parent pipelines, it is not clear what mechanism FERC might use to enforce its threat.

Nevertheless, the Conoco court is correct that FERC's reading of "in connection with" is a permissible interpretation of the statute under the Chevron doctrine. The statute itself states that it does not apply to gathering activities. If Field Services were not owned by El Paso, there would be no question that FERC does not have the authority to regulate it. The statute does not address affiliated gatherers, and the petitioners have not cited any cases that conflict with FERC's reasoning that a gatherer that deals with its parent even-handedly should get the same treatment as a gatherer whose owners are not involved in jurisdictional activities. The statutory language, then, allows FERC to treat Field Services on its own terms and not as a company that provides transportation or sales "in connection with" jurisdictional activities. See also Altamont Gas Transmission Co. v. FERC, 92 F.3d 1239, 1245-46 (D.C. Cir. 1996) (deferring to FERC's determination that coordination and integration at arm's length between Pacific Gas Transmission, an interstate pipeline company, and PG&E, a nonjurisdictional intrastate distribution company, did not give FERC jurisdiction over the subsidiary pipeline company), petition for cert. filed 65 U.S.L.W. 3531 (U.S. January 22, 1997).

The local distribution companies and the New Mexico appellants also argue that FERC violated the Act because it failed to consider

12

whether competition was sufficient to warrant granting El Paso's abandonment request. Under 15 U.S.C. § 717f(b), FERC may not authorize abandonment unless it finds that "future public convenience or necessity permit such abandonment." FERC's response to this argument curiously suggests that it does not have the power to examine whether abandonment would be in the public interest when a pipeline is abandoning its gathering facilities to a nonjurisdictional entity. As we read the statute, it makes no difference who gets the facilities or, indeed, whether anyone gets them at all — "[a]bandonment within the meaning of NGA § 7 is an act that permanently reduces a significant portion of a particular service dedicated to interstate markets." Columbia Gas Transmission Corp. v. Allied Chemical Corp., 652 F.2d 503, 511 (5th Cir. Aug. 1981) (citing Reynolds Metal Co. v. FPC, 534 F.2d 379, 384 (D.C. Cir. 1976)). But any error on FERC's part was inconsequential. FERC has the authority to develop its own methods of ensuring public convenience and necessity. Consolidated Edison Co. v. FERC, 823 F.2d 630, 636 (D.C. Cir. 1987). FERC did consider antitrust problems that could arise from El Paso's spin-off of its gathering facilities and took steps to maintain competition by requiring open access and default contracts and threatening to re-assert its jurisdiction if Field Services should act discriminatorily. The statute does not require a more specific inquiry into the state of competition so long as FERC has carefully evaluated the danger that abandonment will lead to monopoly and acted to maintain competition. See generally United Distribution

13

Cos. v. FERC, 88 F.3d 1105, 1134-42, 1134 (D.C. Cir. 1996) (granting petitioners relief "insofar as the Commission stated . . . that any change to injection and withdrawal schedules can be effected without a § [717f(b)] abandonment proceeding," but generally deferring to FERC on the adequacy of its protections against monopoly power), petition for cert. filed, 65 U.S.L.W. 3531 (U.S. January 31, 1997).

In sum, we choose to follow the D.C. Circuit's lead and hold that FERC construed the Natural Gas Act reasonably when it determined that gatherers are outside of its statutory jurisdiction even if they are wholly-owned subsidiaries of interstate pipeline companies.

AFFIRMED.