**GLOVER RIVER ORGANIZATION, an Oklahoma non-profit corporation, Plaintiff-Appellee,**

v.

**UNITED STATES DEPARTMENT OF the INTERIOR, et al., Defendants-Appellants.**

**No. 81-1194.**

United States Court of Appeals, Tenth Circuit.

April 12, 1982.

Thomas L. Riesenberg, Atty., Dept. of Justice, Washington, D. C. (Carol E. Dinkins, Asst. Atty. Gen., Jacques B. Gelin and Nancy B. Firestone, Attys., Dept. of Justice, Washington, D. C., James E. Edmondson, U. S. Atty., and Betty Outhier Williams, Asst. U. S. Atty., E. D. Okl., Oklahoma City, Okl., J. Roy Spradley, Jr., Associate Sol., David C. Cannon, Jr., and Ronald Swan, Attys., Dept. of the Interior, Washington, D. C., on the briefs), for defendants-appellants.

Gene Stipe and W. Craig Dawkins of Stipe, Gossett, Stipe, Harper & Estes, Oklahoma City, Okl., for plaintiff-appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Glover River Organization is an Oklahoma non-profit corporation consisting of about 500 members who reside in the Little River Basin area of southeastern Oklahoma. The organization's purpose is promoting flood control projects on the Glover Creek and the entire Little River system. Glover brought this lawsuit to challenge the Secretary of the Interior's listing of the leopard darter as a threatened species and the designation of its critical habitat pursuant to the Endangered Species Act (ESA), 16 U.S.C. §§ 1531–1543 (1976 & Supp. III 1979).[1] Once a plant or animal species has

---

1. The leopard darter is a small fish known to inhabit various rivers in Oklahoma and Arkansas. The Secretary of the Interior learned that pollution and waterway impoundments in the Little River System were adversely affecting the leopard darter's habitat and destroying its population. 41 Fed.Reg. 27,735–36 (July 6, 1976). He published a notice of proposed rule-

been listed as an endangered species and its critical habitat has been designated, the ESA and regulations promulgated thereunder prohibit certain actions which may affect the species or its habitat. 16 U.S.C. § 1538(a). The only basis for Glover's challenge is its claim that the Secretary's failure to prepare an environmental impact statement (EIS) prior to the listing and designation violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4347 (1976 & Supp. III 1979). Glover sought an injunction requiring the Secretary to prepare an EIS and an order staying the listing and designation until an EIS is completed.

Glover alleged that an EIS should have been prepared to study the impact of the listing and designation on future federal funding for flood control projects and other federal assistance programs for farming and industry in southeastern Oklahoma. The Secretary countered with a motion for summary judgment on the grounds that Glover lacked standing, and that in any event, the Secretary complied with NEPA to the extent required under the ESA. The district judge denied the motion and the case was submitted for trial on the pleadings and stipulated facts. The district court found that Glover had standing to sue and concluded that the Secretary should have prepared an EIS. Unpublished Memorandum Opinion, Record, vol. 1, at 178–79. Accordingly, the court granted the requested injunction and stay. From this order the Secretary appeals.

■ A court cannot reach the merits of a case unless it first satisfies itself that the plaintiff is a proper party to bring the suit and that the issues raised are justiciable. Article III, section 2 of the United States Constitution requires the plaintiff to establish that a "case or controversy" exists between himself and the defendant which is proper for judicial resolution. The threshold question in each case is whether the plaintiff has standing, that is, "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975), *quoting Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691 (1962). As a constitutional minimum, Article III requires that the plaintiff allege in his complaint (1) "a distinct and palpable injury to himself" and (2) that "the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm." *Warth v. Seldin*, 422 U.S. at 501, 505, 95 S.Ct. at 2206, 2208. In short, the plaintiff must allege some concrete injury, whether actual or threatened, and some chain of causation linking that injury to the challenged actions of the defendant.[2] In addition to satisfying itself that the plaintiff has standing to sue, the court must be convinced that the case is ripe for adjudication. The ripeness inquiry focuses on "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Id.* at 499 n.10, 95 S.Ct. at 2205 n.10. We therefore turn to the stipulated evidence in this case to evaluate the sufficiency of the proof under these standards.

making to list the darter as a threatened species and to designate its critical habitat. *Id.* at 27,735–38. Twenty-five comments were received in response to the notice, nineteen favoring and six opposing the proposed listing and designation. 43 Fed.Reg. 3,712 (Jan. 27, 1978). Glover did not submit any comments. The Secretary also held public hearings and prepared an Environmental Impact Assessment. Based on the foregoing, the Secretary published a final rule on January 27, 1978 listing the leopard darter as a threatened species and designating its critical habitat. *Id.* at 3,711–16. The critical habitat includes portions of the Little River, Black Fork Creek, Glover Creek, and Mountain Fork Creek in Oklahoma and Arkansas. *Id.* at 3,715. The final rule can be found at 50 C.F.R. §§ 17.11, 17.44(d), 17.95(e) (1980).

2. The same rules apply when an organization is the plaintiff. The organization must allege some injury either to itself or its members, and must allege that this injury is the result of the challenged action. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975).

Glover's allegations of standing are found in paragraph 22 of its complaint. Record, vol. 1, at 12–17. It alleged the following: (1) that the Glover Creek and Little River were the scene of severe flooding in 1971 and 1972, *id.* at 13; (2) that its members incurred heavy flood damage in 1971 and 1972 as a result of those floods, *id.* at 15–16; (3) that its members "are now and will continue to be in danger of loss of life and property by the threatened and actual agency action," *id.* at 16–17; (4) that as a result of the listing of the darter, "no Federal Monies will be available to aid in construction of the much needed Dams and Soil Conservation Service Watershed Projects, which would remedy the [flooding] problems," *id.* at 14; (5) that there are potential dam sites which could not be constructed if the listing is upheld, *id.*; (6) that the listing "would strictly prohibit the building of any dams which are funded by Federal Monies ..., leading to increased flooding of the area, and effectively curtailing the growth of this region," *id.* at 15; and (7) "[t]hat the absence of an Order placing the Leopard Darter on the threatened species list would allow the Lukfata Dam to be constructed on the Glover River as Congress has recently re-funded the project," *id.* at 17.

■ The first question in analyzing standing is whether Glover has demonstrated a distinct and palpable injury to itself or its members.[3] It is clear that abstract injury is not enough to confer standing: "[t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). *See also United States v. SCRAP,* 412 U.S. 669, 688–89, 93 S.Ct. 2405, 2416–17, 37 L.Ed.2d 254 (1973) ("pleadings must be

something more than an ingenious academic exercise in the conceivable"). It is equally clear that an organization's abstract concern with a subject does not substitute for the concrete injury required by Article III. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976); *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972).

■ Glover alleges that its members suffered property damage during floods in 1971 and 1972. This allegation is supported by affidavits of Glover's members. Record, vol. 1, at 27–159. We also read the complaint as sufficiently alleging a threat of future flood damage if dams are not built to prevent flooding. This injury is not speculative or hypothetical, and it shows that Glover's members have more than an abstract concern with the subject of flood control. We therefore hold that Glover has met Article III's requirement that the plaintiff demonstrate a concrete injury to itself or its members.

■ While we have no difficulty in concluding that the potential for recurring flooding in the absence of the construction of dams or other flood control projects constitutes a sufficient injury for standing purposes, a more difficult question is whether plaintiff has presented sufficient proof that there is a substantial likelihood that absent the listing of the leopard darter one or more flood control projects helpful to plaintiff would be undertaken. The Supreme Court has required "a showing that there is a 'substantial likelihood' that the relief requested will redress the injury claimed." *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 75 n.20, 98

---

**3.** In cases reviewing the grant or denial of a motion to dismiss for lack of standing, it is sufficient for standing purposes that the plaintiff merely *allege* a concrete injury. *See Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 45 n.25, 96 S.Ct. 1917, 1927 n.25, 48 L.Ed.2d 450 (1976); *United States v. SCRAP,* 412 U.S. 669, 689–90, 93 S.Ct. 2405, 2416–17, 37 L.Ed.2d 254 (1973). However, where the case proceeds to summary judgment or, as here, to trial, standing is evaluated not on the pleadings

alone but on the basis of all the evidence in the record. At this stage, the plaintiff must do more than plead standing; he must prove it. *See Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 115 n.31, 99 S.Ct. 1601, 1616 n.31 (1979); *Citizens Concerned for Separation of Church and State v. City & County of Denver,* 628 F.2d 1289, 1294–95, 1298 (10th Cir. 1980), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981).

S.Ct. 2620, 2631 n.20, 57 L.Ed.2d 595 (1978). *See also Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261–62, 264, 97 S.Ct. 555, 561–62, 563, 50 L.Ed.2d 450 (1977); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 45–46, 96 S.Ct. 1917, 1924, 1927–28, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 504, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975). Although plaintiff has broadly alleged that absent the listing, flood control projects would be undertaken, there is no proof in the record to support such a conclusion. The trial court's findings concerning standing are general in nature and point to no record evidence on this matter. No stipulated facts or record testimony supports the existence of a substantial nexus between the relief requested and the elimination of plaintiff's injury.[4]

Some mention has been made in the pleadings, briefs and arguments of the "proposed" Lukfata Dam project. Unfortunately, the record does little or nothing to illuminate what is meant by "proposed." The record might remotely support a conclusion that the Secretary's listing of the darter may have influenced congressional decisions relating to funding of the Lukfata project. But even if it were clear that Congress was influenced by the listing, the listing does not prohibit congressional action.[5] As the author of the ESA, Congress can repeal or amend the act if it, Congress, wishes to proceed with Lukfata or any other project that threatens the existence of the leopard darter. Thus, any effect of the listing on Congress would be political, not legal, in nature. That is not the kind of consequence flowing from the challenged action that will support standing. No attempt at all was made to show an influence on private or even state funding as was done in *Duke Power*. *See* 438 U.S. at 75–77, 98 S.Ct. at 2631–32.

The instant case is squarely governed by the principles enunciated in *Duke Power, Arlington Heights, Warth*, and *Simon*. Glover has failed to show an injury "that is likely to be redressed by a favorable decision." *Simon*, 426 U.S. at 38, 96 S.Ct. at 1924. Much less has Glover "establish[ed] that, *in fact*, the asserted injury was the consequence of the defendants' actions, or that prospective relief *will remove* the harm." *Warth*, 422 U.S. at 505, 95 S.Ct. at 2208 (emphasis added). With respect to the 1971–72 flood damage to Glover's members, there is no causal connection whatsoever, because the 1978 listing of the leopard darter as a threatened species was in no way related to a failure to build dams to prevent the earlier floods. As for the asserted loss of federal funding, the causal link to the listing, if any exists, is far too speculative to support standing. *Simon*, 426 U.S. at 42–43, 45, 96 S.Ct. at 1926–27, 1928. Even if the preparation of an EIS should lead to removal of the leopard darter from the threatened species list, this would not ensure the funding or construction of the projects Glover desires. Such relief must come from Congress and the President, not the Secretary of the Interior. Since "the [record] suggests no substantial likelihood that victory in this suit would result in [Glover's] receiving the [projects it] desire[s]," *id.* at 45–46, 96 S.Ct. at 1927–28, we hold that Glover has not established the causation and redressability requisite for standing.

The district court should have granted the defendants' motion for summary judg-

---

4. This factor distinguishes the instant case from *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), where the Court granted standing. In that case there was testimony in the record indicating that the challenged nuclear power plants would not be completed in the absence of the limitation of liability provided by the Price-Anderson Act, 42 U.S.C. § 2210 (1976). 438 U.S. at 75–77, 98 S.Ct. at 2631–32.

5. While it is clear that in listing the leopard darter the Secretary intended to prevent the development of Lukfata Dam, *see* 43 Fed.Reg. 3,711, 3,714 (Jan. 27, 1978), the relevant inquiry is not what the Secretary intended but whether it had the intended effect. As we discuss in the text, the listing does not prevent Congress from amending or repealing the ESA if it wishes to proceed with projects, such as Lukfata, that jeopardize the continued existence of the leopard darter.

ment on the ground that plaintiffs lacked standing.

REVERSED.