**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARIAN P. OPALA,

       Plaintiff - Appellee,

v.

JOSEPH M. WATT; JAMES R.
WINCHESTER; ROBERT E.
LAVENDER; RUDOLPH
HARGRAVE; YVONNE KAUGER;
JAMES E. EDMONDSON, STEVEN
W. TAYLOR; and TOM COLBERT,
in their individual and administrative
capacities,

       Defendants - Appellants.

No. 05-6261

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-04-1771-R)**

---

W.A. Drew Edmondson, Attorney General (Neal Leader, Senior Assistant
Attorney General on the briefs), Office of the Attorney General State of
Oklahoma, Oklahoma City, Oklahoma for the Defendants - Appellants.

Scott F. Brockman (Stanley M. Ward and Woodrow K. Glass, with him on the
briefs), Ward & Glass, LLP, Norman, Oklahoma for the Plaintiff - Appellee.

---

Before **LUCERO**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Article 7 section 2 of the Oklahoma Constitution provides that the Justices of the Oklahoma Supreme Court shall choose a Chief Justice and Vice-Chief Justice from among their members. Having failed in his desire to be chosen once again Chief Justice of the Oklahoma Supreme Court, Justice Marian P. Opala seeks to invoke the jurisdiction of the federal courts in his effort to achieve that end. He brings to us claims that he was discriminated against on the basis of his age in violation of the Equal Protection Clause and that his due process rights were violated when his colleagues on the Oklahoma Supreme Court changed the rule of rotation for elevation of a Chief Justice from one which precluded re-election to that position for more than one consecutive term to one which lifted that prohibition and re-elected Joseph P. Watt as Chief Justice.

After Justice Opala named his judicial colleagues as defendants in federal proceedings, they responded by asserting several defenses, including sovereign immunity, qualified immunity, and legislative immunity. The district court disagreed with the defendants, concluded that federal jurisdiction was properly invoked, and denied the motion to dismiss. Defendants bring an interlocutory appeal. We take a quite different view of the jurisdictional issue, and for the reasons that follow, we **REVERSE** the judgment of the district court and **REMAND** with instructions to **DISMISS** the complaint with prejudice.

Implementation of the Oklahoma constitutional provision for choosing a Chief Justice and a Vice-Chief Justice is set forth in Rule 4 of the Internal Operating Procedures of the Oklahoma Supreme Court Conference. Prior to November 4, 2004, Rule 4 provided:

> The term of office of Chief Justice shall rotate among eligible members of the Court every two years. A Justice is eligible to become Chief Justice when each sitting Justice at the time of the Justice's appointment has completed a term as Chief Justice or waived his or her right to do so. No Justice shall succeed himself or herself as Chief Justice, nor shall a Justice be eligible hereunder until he or she has completed six years service as Justice of this Court.

("Old Rule 4"). In his complaint, Justice Opala claims that this rule, and his status as Vice-Chief Justice at the time, created a "reasonable expectation" that he would be nominated for Chief Justice.

On November 4, 2004, all members of the Oklahoma Supreme Court, save Justice Opala, convened a conference to vote on a proposed change to Rule 4. Justice Opala was aware of the meeting, but chose not to attend in protest. The defendants voted to amend the rule, which now reads:

> The term of office of Chief Justice shall rotate among eligible members of the Court every two years. The next senior Justice who has never served as Chief Justice should be considered for election as Chief Justice, provided that the Justice has served at least four (4) years on this Court including service as Vice-Chief Justice. If the next senior Justice has not served at least four (4) years on the Court including service as Vice-Chief Justice, the incumbent Chief Justice or any other Justice who has served as Chief Justice may be elected

to another two-year term as Chief Justice. Otherwise, the Chief Justice will serve only one term.

("New Rule 4"). According to Justice Opala, the practical effects of this amendment were to cause defendant-Chief Justice Joseph Watt to have top priority for being re-elected to the position of Chief Justice, and to prohibit Justice Opala himself from being elected as Chief Justice. Specifically, Justice Opala asserted that because of "[his] tenure as a Justice of the Court, [he] was the only Justice eligible to be nominated for the Office of Chief Justice because each of the other Justices that had satisfied the qualification of completing six (6) years of service as Justice [Opala] had completed a term of Chief Justice." The defendant-Justices duly voted pursuant to New Rule 4, and re-elected Chief Justice Watt. Justice James Winchester was elected to Vice-Chief Justice.

On December 29, 2004, Justice Opala filed suit in federal district court against the other members of the Oklahoma Supreme Court challenging the constitutionality of New Rule 4. He argued that the amendment to Old Rule 4 violated his rights to equal protection of the laws pursuant to the Fifth and Fourteenth Amendments because it was motivated in part by his age (Justice Opala was eighty-three at the time of filing). He also asserted that he was deprived of a liberty interest in the Chief Justiceship in violation of the procedural component of the Due Process Clause because the amendment did not

provide for any post-deprivation hearing. The only redress he sought was a declaration that New Rule 4 violated the Constitution.

As noted, defendants moved to dismiss invoking legislative immunity, sovereign immunity under the Eleventh Amendment, qualified immunity, and failure to present a substantial federal question. The district court denied the motion, finding that: (1) legislative immunity did not apply because the amendment was an administrative and not a legislative act; (2) the suit fell within the Ex Parte Young, 209 U.S. 123 (1908), exception to Eleventh Amendment sovereign immunity because Justice Opala was seeking prospective – not retroactive – equitable relief; (3) qualified immunity did not apply because Justice Opala was not seeking money damages; and (4) determining whether Justice Opala asserted a "substantial federal question" was infeasible without discovery. Defendants' subsequent motion for reconsideration of the denial of their motion to dismiss was denied by the district court. It was then that the defendants sought this interlocutory appeal.

## II

We review de novo the district court's denial of a motion to dismiss for lack of subject matter jurisdiction. Brumark Corp. v. Samson Resources Corp., 57 F.3d 941, 944 (10th Cir. 1995). We have jurisdiction to review the district court's denial of defendants' motion to dismiss for lack of subject matter jurisdiction under the collateral order exception to 28 U.S.C. § 1291, which

- 5 -

provides for interlocutory appeal of orders denying motions to dismiss brought on the basis of Eleventh Amendment immunity as the basis for appellate jurisdiction.

Before Justice Opala filed this suit, Chief Justice Watt was re-elected to his post, and Justice Opala was succeeded as Vice-Chief Justice by Justice Winchester. Because we are only permitted to grant prospective equitable relief under Ex Parte Young, we cannot undo this election. Moreover, a declaration that New Rule 4 is unconstitutional will not remedy Justice Opala's claimed injury that he was not able to stand for election under Old Rule 4 while serving as Vice-Chief Justice. Accordingly, we reverse the district court's denial of defendants' motions to dismiss, and remand with instructions that the district court dismiss the complaint for want of jurisdiction.

As courts of limited subject matter jurisdiction, the federal courts may only rule upon "Cases" and "Controversies." U.S. Const. art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 499 (1975).

The "irreducible constitutional minimum" of Article III's case-or-controversy requirement contains three elements. Lujan, 504 U.S. at 560; Committee to Save the Rio Hondo v. Lucero, 102 F.3d 445, 447 (10th Cir.1996).

First, the plaintiff must have suffered an "injury in fact" that is "concrete" rather than "conjectural or hypothetical." Lujan, 504 U.S. at 560. Second, the plaintiff must show that there is a "causal connection between the injury and the conduct complained of." Id. Finally, the plaintiff must show that it is "likely," and not merely "speculative," that the injury complained of will be "redressed by a favorable decision." Id., 504 U.S. at 561. The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. Id.

Because this suit is against the members of the Oklahoma Supreme Court in their official capacities, federal jurisdiction is limited by sovereign immunity. "[N]onconsenting States may not be sued by private individuals in federal court." Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); see also Alden v. Maine, 527 U.S. 706, 713 (1999) ("[A]s the Constitution's structure, and its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution and which they retain today . . . .").

A state's immunity from suit by private individuals in federal court is not absolute. It may be overcome in three instances: (1) the state consents to suit; (2) Congress expressly abrogates the states' immunity; or (3) the citizen sues a state official pursuant to Ex Parte Young, 209 U.S. 123 (1908). See J.B. ex rel.

Hart v. Valdez, 186 F.3d 1280, 1286 (10th Cir. 1999). This third exception to Eleventh Amendment immunity is now before us.

In determining whether a suit falls within the Ex Parte Young exception, this court applies a four-part test:

> First, we determine whether the action is against state officials or the state itself. Second, we look at whether the alleged conduct of the state officials constitutes a violation of federal law. Third, we assess whether the relief sought is permissible prospective relief or analogous to a retroactive award of damages impacting the state treasury. Finally, we analyze whether the suit rises to the level of implicating 'special sovereignty interests.'

Robinson v. Kansas, 295 F.3d 1183, 1191 (10th Cir. 2002) (internal citations and quotations omitted).

The district court found that Justice Opala's suit satisfied all four criteria for the Ex Parte Young exception. In order to review this determination, it is necessary that we consider Justice Opala's complaint in detail. Justice Opala sought a declaratory judgment declaring that the amendment of Rule 4:

> (1) constitutes a violation of Plaintiff's right to equal protection pursuant to the Fifth and Fourteenth Amendments to the United States Constitution; (2) constitutes a substantial deprivation of Plaintiff's property without due process of law in violation of the Fourteenth Amendment of the United States Constitution; (3) violated due process of law under the Fourteenth Amendment of the United States Constitution because it does not provide for any adequate and immediate post-deprivation hearing on Plaintiff's preclusion from eligibility to be nominated for the position of Chief Justice; and (4) constitutes a substantial deprivation of Plaintiff's liberty interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

The district court observed that Justice Opala is not requesting retroactive money damages from the state; rather, the relief he is requesting is to "end an ongoing violation of Plaintiff's constitutional rights" by reinstating Old Rule 4. Opala v. Watt, 393 F. Supp. 2d 1154, 1160 (W.D. Okla. 2005). The court correctly concluded that the mere fact that Opala was seeking to "right a previous wrong" did not disqualify the action from the Ex Parte Young exception.

However, the district court's analysis of its jurisdiction in this matter was incomplete: Not only must the requested relief be prospective in nature (to satisfy Ex Parte Young), a ruling from this court must be capable of redressing the alleged injury for Justice Opala to have standing to file his suit. Because Justice Opala was no longer the Vice-Chief Justice of the Oklahoma Supreme Court when he filed suit, and because the equitable powers of the federal courts are limited to providing prospective equitable relief, we ordered supplemental briefing on whether this court was capable of issuing a remedy that redresses Justice Opala's alleged injury. In their supplemental brief, appellants argue that even were we to declare that New Rule 4 is unconstitutional, Justice Opala would nevertheless have to stand for election, and his election to Chief Justice would not be more likely. Thus, they tell us, any relief we may afford would only speculatively redress Justice Opala's alleged injury. Justice Opala disagrees, and insists that if we reinstated Old Rule 4, such action would undoubtedly redress his injuries. He argues that "[a] ruling in Justice Opala's favor would declare the

- 9 -

amended Rule 4 invalid as violative of Justice Opala's Constitutional rights, and would place Justice Opala in the Constitutionally-protected position he was in prior to the rule's amendment." This statement, however, mischaracterizes Justice Opala's injury. According to his own brief, his injury is that "the amendment to Rule 4 removed him from his investitive track to be Chief Justice without rational basis and did not permit him to come up for selection as Chief Justice in the same manner that all other Vice-Chief Justices had for the past sixty plus (60+) years." Because declaring New Rule 4 to be unconstitutional would not redress this injury, we must vacate the judgment below and dismiss the suit.

In Glover River Org. v. United States Dept. of Interior, 675 F.2d 251 (10th Cir. 1982), we considered a challenge to the Secretary of Interior's listing of the leopard darter on an endangered species list. Plaintiffs claimed that they were injured because the listing precluded them from promoting a flood control project on a river in Oklahoma. Id. at 254. They sought an injunction requiring the Secretary of the Interior to prepare an environmental impact statement together with an order staying the listing until the statement was completed. Id. We held plaintiffs lacked standing because a remedy from the federal courts would not redress their alleged injuries. Id. at 255. Specifically, we concluded that even if preparation of an environmental impact statement led to the removal of the leopard darter from the endangered species list, "this would not ensure the funding or construction of the project." Id.

- 10 -

More recently in <u>Wyoming Sawmills, Inc. v. United States Forest Service</u>, 383 F.3d 1241 (10th Cir. 2004), a timber company claimed that it was denied the right to buy timber because of an Historical Preservation Plan issued by the United States Forest Service for the management of Medicine Wheel National Historic Landmark. The company claimed that the refusal to hold the timber sale violated the Establishment Clause and the national Forest Management Act. <u>Id.</u> at 1244-45. The district court found that the plaintiff timber company lacked standing to challenge the Plan "because the court could not remedy the constitutional wrongs plaintiff had alleged." <u>Id.</u> at 1246. Even if the Historic Preservation Plan were declared unconstitutional, the district court concluded, the Forest Service would nevertheless not be under any obligation to sell timber from the area. Affirming the dismissal for lack of standing for want of pleading a redressable injury, we held:

> Wyoming Sawmills has not shown that a timber lease would "likely" become available on the lands within the area of consultation if plaintiff were to have the HPP set aside. As in <u>Baca</u> [<u>Baca v. King</u>, 92 F.3d 1031 (10th Cir. 1996)], the federal agency has complete discretion as to whether to offer the opportunity sought by the plaintiff, and accordingly the courts do not have the power to grant the only relief that would rectify the alleged injury.

<u>Id.</u> at 1249.

Applying these authorities to the present litigation yields a clear result: Any remedy the federal courts could fashion would not redress Justice Opala's injury. According to his complaint, Justice Opala was injured because he had to

- 11 -

face election under New Rule 4 rather than under Old Rule 4.  Because he was Vice-Chief Justice at the time, the use of Old Rule 4 would have made his election as Chief Justice likely.  As stated in his brief:

> [A] ruling in his favor, which would reinstate the pre-determined sequential order to that which existed prior to the Rule 4 amendment, would redress in full Justice Opala's grievance.  It will place him back in the investitive track for Chief Justice, cure the Constitutional defects incurred by Appellee's Rule 4 amendment, and allow Justice Opala to stand for selection as Chief Justice where he must be the first 'candidate' considered.

However, we lack the power to "reinstate the pre-determined sequential order to that which existed prior to the Rule 4 amendment."  We simply cannot make Justice Opala Vice-Chief Justice again.  This is precisely the type of retroactive equitable relief prohibited under the Ex Parte Young doctrine.  The relief sought in the complaint – a declaration that New Rule 4 is unconstitutional – would not place Justice Opala in the position he was in on November 3, 2004.  There is no prospective remedy that can unring that bell.[1]  Justice Opala's claimed injury is

_____

[1] At oral argument, counsel for Justice Opala, responding to a line of questioning about redressability, suggested that the proper remedy was a "post-election, post-deprivation name clearing" hearing.  We cannot understand how such a hearing would redress Justice Opala's claimed injury.

simply not redressable with prospective relief.[2]  Thus, the federal courts lack the power to resolve this dispute.

### III

Because no prospective equitable relief can redress Justice Opala's alleged injury, we **REVERSE** the judgment of the district court and **REMAND** with instructions that the district court **DISMISS** the complaint for want of jurisdiction with prejudice.  Justice Opala's "application to file statement regarding disputed facts" is **DENIED**.

---

[2] Justice Opala cites Regents for the Univ. of California v. Bakke, 438 U.S. 265 (1978) for the proposition that a plaintiff need not prove he will prevail in a contest (such as the election for Chief Justice) in order to constitutionally challenge the rules of that contest.  In Bakke, the Supreme Court held that a medical school applicant had standing to challenge the school's quota for minority students although he could not prove that absent the quota he would have been admitted.  Bakke's injury did not consist in being rejected from medical school per se.  Rather, he allegedly was injured by being forced to unconstitutionally compete for a smaller number of slots.  This is not the case before us.  The only remedy that we may provide is to declare New Rule 4 unconstitutional.  This would not redress Justice Opala's claimed injury because it would not restore his place in the "investitive track."